## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL R. MATOVICH | ) | Case No.: 2:22-cv-1571 |
| | ) | |
| Plaintiffs, | ) | **Jury Trial Demanded** |
| v. | ) | |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS | ) | |
| USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Michael R. Matovich ("Mr. Matovich" or "Plaintiff") brings this complaint against Siemens Medical Solutions USA, Inc. ("Siemens" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.* Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

## THE PARTIES

2. Plaintiff, Mr. Matovich, is a citizen of the Commonwealth of Pennsylvania.

3. Upon information and belief, Defendant Siemens is a corporation organized under the laws of the state of Delaware designated as a foreign corporation in

Pennsylvania with its principal place of business in Western Pennsylvania at 750 Holiday Drive, Pittsburgh, PA 15220.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 as one arising under laws of the United States. *See* 28 U.S.C. §1331.

5. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because the "unlawful employment practice[s]" giving rise to this lawsuit took place within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to filing claims under Title VII have been performed or have occurred. Namely, Mr. Matovich filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commissions ("EEOC") as dual filed with the Pennsylvania Human Relations Commission ("PHRC") in February of 2022. Plaintiff has fully exhausted his administrative remedies as to his federal claims and is entitled to file in district court (see Exhibit A). Plaintiff will seasonably amend his pleadings to include his claims falling under the PHRC once they have been fully exhausted.

## FACTUAL BACKGROUND

7. Siemens designs, builds, and services a broad range of diagnostic instruments, assays, and imaging products used by hospitals and healthcare providers across the country (and globally). These products include CT scanners, MRI

machines, X-ray machines and other equipment and diagnostic testing devices.

8.  In about September of 2015, Mr. Matovich was hired to work as a customer service engineer in Defendant's laboratory diagnostics department.

9.  In about January of 2020, Mr. Matovich held the position of a customer service engineer with Defendant's medical imaging department. Among Mr. Matovich's job responsibilities were troubleshooting, repairing, and performing preventative maintenance on magnetic resonance scanners.

10. In the Fall of 2021, Siemens decided that its employees should be vaccinated against the COVID-19 virus (the "Policy").  This included employees in its U.S. offices, including all or many in Defendant's Pennsylvania locations. While Siemens provided exemption request documents, the company did not plan to allow certain disfavored employees to have reasonable accommodations/exemptions—as required under Title VII—from its COVID-19 vaccine mandate.

11. On, or about, August 31, 2021, Siemens notified Mr. Matovich via email of its new COVID vaccine requirement, informing Mr. Matovich he was required to submit his vaccination status by September 18, 2021, and to be fully vaccinated by October 15, 2021.

12. On, or about, September 16, 2021, Mr. Matovich submitted his religious

exemption/accommodation form via email to Defendant's HR department and reported his status as "unvaccinated." Consequently, Mr. Matovich correctly provided a request for a religious exemption on September 16, 2021.

13. Mr. Matovich has sincerely held religious views that using COVID vaccines is morally wrong in view of, *inter alia,* his reasonable belief that aborted fetal cell lines were/are used in researching and producing the vaccines. Accordingly, Mr. Matovich outlined the multiple religious reasons he has for being unable to receive the vaccine. Further, in doing so, Mr. Matovich's letter demonstrated a willingness to accept any accommodation that would not violate his sincerely held religious beliefs and offered explanations.

14. On, or about, September 23, 2021, Mr. Matovich received an email from Defendant requesting information about the accounts he was servicing to which Mr. Matovich responded on, or about, September 27, 2021.

15. Critically, none of Mr. Matovich's assigned accounts required vaccination.

16. On, or about, October 15, 2021, Plaintiff received an email stating that his accommodation request was denied. He was placed on unpaid suspension on, or about, November 1, 2021, and received a letter of termination on November 12, 2021.

17. In denying Mr. Matovich's request, Siemens decided instead that it could rely on the argument that it would be a "significant undue hardship" to allow

unvaccinated employees like Mr. Matovich to continue working for the company—an unsupportable claim. Setting aside the fact that the overwhelming majority of U.S. based companies managed to navigate the COVID-19 pandemic without instituting a vaccination mandate, there were a multitude of no-cost accommodation options available in Mr. Matovich's specific case. Thus, Mr. Matovich could have been accommodated but was forced out of Siemens.

18. Although Siemens has admitted that weekly testing for COVID was an option, it also admits it never discussed weekly testing nor its costs with Mr. Matovich, concluding arbitrarily that doing so was "unmanageable."

19. There were and are a multitude of convenient, cost-effective COVID tests available on the market.

20. Siemens' management repeatedly asserted throughout the relevant timeframes, through word and action, that the available COVID-19 vaccines were effective at preventing transmission of the virus and that the Policy was necessary to ensure workplace safety. While absolute vaccine necessity was always a dubious proposition, the inefficacy of the vaccines at preventing the contraction and transmission of COVID-19 became increasingly clear in October and November of 2021 as the Omicron variant became dominant. Nonetheless, Defendant terminated Plaintiff in November.

21. Upon information and belief, Siemens' own record will likely demonstrate that Siemens was aware of the fact that the vaccines mandated by Siemens were not effective at stopping transmission of the virus during the relevant timeframes.

22. Defendant claims it offered Mr. Matovich the opportunity to apply for other positions, but Siemens fails to mention that Mr. Matovich was not qualified for these jobs to which Siemens was referring. Additionally, upon information and belief, those jobs may have required a significant pay cut or relocation. This was not a reasonable accommodation.

23. Any reasonable person viewing these facts would deduce Siemens simply intended to undermine Plaintiff's religious beliefs and that Siemens' grounds for denying Plaintiff's request for an accommodation was pretextual.

24. The EEOC Guidelines have made clear that "when there is more than one means of accommodation which would not cause undue hardship"—which existed in Mr. Matovich's case— "the employer . . . must offer the alternative which least disadvantages the individual with respect to his or her employment opportunities." *See EEOC Commission Guidelines*, 29 C.F.R. § 1605.2(c)(2)(ii).

## REASONABLE ACCOMODATION OPTIONS UNJUSTIFIABLY REJECTED BY SIEMENS

25. Siemens could have accommodated Mr. Matovich's sincere religious beliefs without undue hardship (indeed, with no cost whatsoever, if Mr. Matovich paid for testing). Siemens failed to engage in the interactive process to legitimately consider all possible accommodations. This caused Siemens to overlook accommodations posing less than a *de minimis* burden including: (1) testing for COVID antibodies and acknowledging that Mr. Matovich's natural immunity satisfied Siemen's immunization requirements (because it is superior to vaccine-induced immunity); (2) weekly testing for COVID-19 (for which Mr. Matovich was willing to pay for and which is a more reliable indication of safety than vaccination); (3) testing/masking when required to attend an in-person meeting; or (4) any combination of the above.

26. At the time of Mr. Matovich's termination, the CDC had conclusively stated that individuals vaccinated for COVID-19 could nevertheless contract and spread COVID-19. On March 29, 2021, the Director of the CDC Rochelle Walensky publicly stated that the CDC's own data "suggests, you know, that vaccinated people do not carry the virus, don't get sick, and that it's not just in the clinical trials but it's also in real world data."[1]

---

[1] Statement from CDC Director Rochelle P. Walensky, MD, MPH on Rachel Maddow Show (March 29, 2021), transcript available at: https://www.msnbc.com/transcripts/transcript-rachel-

27. However, because the real-world data already demonstrated breakthrough infections in the vaccinated just three months after the Pfizer-BioNTech vaccine received FDA approval, the CDC immediately thereafter clarified Director Walensky's statements and confirmed that vaccinated individuals do in fact become infected and spread the virus to others. *See* CDC Reverses Statement by Director, (April 2, 2021), available at: https://thehill.com/changingamerica/well-being/546234-cdc-reverses-statement-by-director-that-vaccinated-people-are-no/.

28. Before instituting its vaccination policy, Siemens knew or should have known that the vaccines were largely ineffective at controlling the spread of COVID-19. As early as July 2021, Director Walensky admitted that the vaccinated had similarly high viral loads of SARS-CoV-2 as the unvaccinated and thus could still contract and spread the Delta variant.[2]

29. In August 2021, a joint study by CDC and the Wisconsin Department of Health services further confirmed Director Walensky's admission. The study

---

maddow-show-3-29-21-n1262442?utm_content=buffer7fb12&utm_medium=Arianna&utm_source=LinkedIn&utm_campaign=Buffer.

[2] *Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, CDC News Room (July 30, 2021), available at https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html [https://perma.cc/VR5V-E67A] ("Today, some of those data were published in CDC's Morbidity and Mortality Weekly Report (MMWR), demonstrating that Delta infection resulted in similarly high SARSCoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus.").

indicated that vaccinated individuals had a 5% higher viral load than the unvaccinated and were not only just as likely to transmit the virus as the unvaccinated but posed a greater contagion risk due to the increased likelihood of asymptomatic infection.[3]

30. Highlighting the irrationality of Siemens' continued pursuit of enforcing its mandate against religious employees, Siemens refused to recognize natural immunity as satisfying its immunization requirement. This is despite the fact that the international scientific community had conclusively established through centuries of research that natural immunity is superior to vaccine-elicited immunity. *See Plotkin's Vaccines*, 7th Edition, at Section 2.

31. Siemens is a sophisticated healthcare company which focuses on sophisticated medical devices and should have been aware of the fallacy of enforcing its vaccination Policy in the context of undue hardship and failed to even consider the religious beliefs of Mr. Matovich when determining whether it could exempt him.

32. Recognizing Mr. Matovich's natural immunity to COVID-19 as an alternative to vaccination would have required no cost or action of Siemens

---

[3] *See* Kasen Riemersma, et. al, *Shedding of Infectious SARS-CoV-2 Despite Vaccination, medRxiv* (August 24, 2021), available at:
https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v4.full.pdf.

and would have imposed no logistical or administrative burden on Siemens. It would have simply required that Siemens acknowledge scientific reality.

33. Alternatively, periodic COVID-19 testing—or even testing when travel to customer offices was required—would also have been a costless accommodation. As the CDC recognized in August of 2021, COVID-19 vaccines work "with regard to severe illness and death—they prevent it. But what they can't do anymore is prevent transmission."[4]

34. Because vaccinated individuals may also contract and transmit COVID-19, a negative COVID-19 test is a more reliable indication of safety from the virus than a vaccination at some earlier time. This fact was also well-known at the time Siemens failed to accommodate Mr. Matovich and should have been considered as a reasonable accommodation to the vaccine mandate.

35. Having Mr. Matovich wear a mask on the rare occasion he would have needed to meet someone in person was another possible reasonable accommodation. As Siemens' peers in the industry have shown—including vaccine manufacturer Janssen (J&J)—religiously exempt employees may be accommodated without increased risk or cost through masking.

---

[4] Statement by Rochelle Walensky, U.S. Centers for Disease Control, CNN Interview (Aug. 5, 2021),
available at https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html.

Complaint

## APPLICABLE LAW

36. Title VII prohibits Siemens from discriminating against employees based on their religion. 42 U.S.C. § 2000e-2(a)(1). This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

37. In other words, an employer must "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).

38. This allows a plaintiff to raise claims of religious discrimination under both a disparate treatment theory and a failure-to-accommodate theory. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996).

39. Failure to engage the interactive process to find a solution for an exempt employee "is not an independent violation of Title VII. But as a practical matter, such failure can have adverse legal consequences [because] where an employer has made no effort to act on an accommodation request, courts have found that the employer lacked the evidence needed to meet its burden of proof to establish that the plaintiff's proposed accommodation would actually

have posed an undue hardship." EEOC Guidance, *Section 12: Religious Discrimination*, Part 12-IV.A.2 (citing *EEOC v. Ithaca Indus., Inc*., 849 F.2d 116, 118-19 (4th Cir. 1988) (finding that employer's failure to attempt to accommodate, absent any showing of undue hardship, violated Title VII)); *see also EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("After failing to pursue . . . any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiff's] religious needs without undue hardship on the conduct on its business.").

40. Title VII also prohibits Siemens from retaliating against an employee for engaging in protected activity. *Roberts v. Glenn Industrial Grp.*, 998 F.3d 111, 122 (4th Cir. 2021).

41. Additionally, placing Matovich on unpaid leave and then terminating him was a violation of applicable law which other states where Siemens does business were expressly recognizing before Mr. Matovich's termination. *See, e.g.,* Texas Executive Order GA-40, issued on October 11, 2021, prohibiting termination of an employee "who objects to such vaccination . . . based on a religious belief."

## FIRST CLAIM FOR RELIEF
## TITLE VII – RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE
### (42 U.S.C. § 2000e-2(a)(1))

42. Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs of this complaint.

43. An employee may assert a claim for his employer's failure to accommodate his sincere religious beliefs, so long as the accommodation does not impose undue hardship on the employer. *See EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017).

44. To establish a prima facie claim for failure to accommodate a plaintiff must present evidence that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Id.* (quoting *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).

45. Once the plaintiff has made out a prima facie case for discrimination, "the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Firestone Fibers*, 515 F.3d at 312 (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996).

46. Mr. Matovich clearly established his "bona fide religious belief" and its conflict with the Policy when he submitted his religious accommodation request to Siemens. Because Mr. Matovich could not receive the COVID-19 vaccine without violating his religious beliefs, he could not comply with the Policy and was thus subject to adverse action through both unpaid leave and termination. While Siemens may now attempt to challenge Mr. Matovich's beliefs, it is not the employer's place "to question the correctness or even the plausibility of . . . religious understandings." *Consol Energy*, 860 F.3d at 142.

47. Siemens provided no reasonable accommodations options to Mr. Matovich, nor did it engage in the interactive process to attempt to find a workable accommodation that would not pose an undue hardship to the company. Even if not a standalone claim, the failure to engage in a meaningful interactive process signals an employer's violation of its duty to accommodate because the employer is attempting to remain purposefully ignorant of potential reasonable accommodations.

48. To establish the defense of "undue hardship," Siemens must demonstrate that any of the aforesaid accommodations would "bear more than a *de minimis* cost" on the company. *Hardison*, 432 U.S. at 84. The above stated accommodations required no additional cost or logistical burden to Siemens, as was seen when the company brought back and accommodated numerous

employees from around the country who also held sincere religious beliefs that prevented them from taking the vaccine.

49. The ability to provide reasonable accommodations to employees such as Mr. Matovich is also evident by considering other companies similarly situated to Siemens—including countless hospitals and even COVID-19 vaccine manufacturers such as Janssen (J&J)—that were able to accommodate employees with religious based objections to mandatory COVID-19 vaccination policies.

50. Defendant Siemens is thus without excuse as to why it failed also to follow federal employment law in this regard.

51. Title VII requires an employer to thoroughly consider all possible reasonable accommodations and not just reject requests out of hand with form denials. "If the accommodation solution is not immediately apparent, the employer should discuss the request with the employee to determine what accommodations might be effective."[5]

52. Such accommodations might include things such as telework. In the face of the reasonable options proposed here, Siemens cannot demonstrate even a *de minimis* burden in providing Mr. Matovich with an accommodation.

---

[5] EEOC Guidance Section 12: Religious Discrimination; Part IV, A.2.

53. To be sure, testing was a reasonable accommodation even for people physically entering the workplace—it is undisputed that someone cannot catch COVID-19 from someone who does not have COVID-19. And to the extent that Mr. Matovich would even need to be in contact with other employees or customers, a negative COVID-19 test would have confirmed that he was less of a contagion hazard than untested individuals who were vaccinated at some earlier point in time but who could still contract and transmit COVID-19.

54. In denying Mr. Matovich's request, Siemens blankly asserted "significant undue hardship" and provided no justification as to why or how the several options he proposed (and were clearly available) were unable to be done without undue hardship. This is especially true where recognition of Mr. Matovich's natural immunity and/or continued telework (for example) required no cost, effort, or operational change to the status quo.

55. Moreover, Siemens was on actual of notice both the many possible accommodation options for Mr. Matovich and the fact that the failure to use one of them would result in a Title VII violation. Nonetheless, Siemens forged forward with its campaign to eliminate its religious employees, including Mr. Matovich.

56. Therefore, Siemens unlawfully discriminated against Mr. Matovich based on his sincerely religious beliefs by failing to accommodate those beliefs. Siemens cannot demonstrate that doing so would have imposed any hardship whatsoever, let alone undue hardship.

## SECOND CLAIM FOR RELIEF
### TITLE VII – RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT
(42U.S.C. § 2000e-2(a)(1))

57. Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs of this complaint.

58. Title VII also makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e-3(a). 116. A prima facie case for retaliation requires a showing "that (1) she engaged in activity protected by Title VII; (2) that an adverse employment action was taken by the employer; and (3) that a causal link existed between the protected activity and the adverse action." *Roberts*, 998 F.3d at 122.

59. Here, Mr. Matovich engaged in protected activity under Title VII when he sought a religious accommodation from the Policy that would otherwise require him to violate his sincere religious beliefs.

60. Then, because of his request for an accommodation, Siemens subjected Mr. Matovich to its sham process in violation of federal law.

61. Siemens never intended to accommodate Mr. Matovich. As a result, he was forced from his employment.

62. Were it not for Mr. Matovich's religious beliefs and his request for an accommodation, he would not have been subjected to such treatment.

63. Mr. Matovich was then placed on unpaid leave—a further coercive technique—only to terminate him at the end of the set period of unpaid leave.

64. Upon information and belief, Siemens imposed the period of unpaid leave with the intent to punish those who sought religious accommodation.

65. Siemens hoped that the constant reminder of termination would result in Mr. Matovich abandoning his religious beliefs and surrendering to a coerced injection of a COVID-19 vaccine.

66. Siemens' Policy forced those who were denied religious accommodations into a period of extreme emotional and psychological distress, seeking to coerce religious employees into compliance.

67. But for his request for religious accommodation, Mr. Matovich would not have experienced the psychological and emotional distress from the period of unpaid leave where she was constantly pressured to violate his religious beliefs.

68. Siemens also terminated Mr. Matovich for seeking a religious accommodation to its compulsory vaccination policy. Mr. Matovich

maintained his request for an accommodation through the date of his termination.

69. Separately, Siemens refused to admit its mistake and bring Matovich back even after it became apparent that (1) accommodations were available; (2) the COVID-19 vaccines were not preventing contraction of the virus; and (3) individuals with natural immunity possessed superior immunity to those with the vaccine only. Such actions were due to Mr. Matovich's opposition to Siemens' illegal employment law practice. The company had made up its mind to purge as many unvaccinated religious employees as it believed it could and the position against those seeking accommodations had become entrenched.

70. Siemens' actions forced those denied accommodation onto unpaid leave just to terminate them after an arbitrary specified period, and then not bringing them back when it was possible constitutes retaliation in violation of Title VII.

**COUNT THREE:**
**TITLE VII – RETALIATION – OPPOSITION CLAUSE**
(42 U.S.C. §2000e-3(a))

71. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

72. Title VII also makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e-3(a).

73. A *prima facie* case for retaliation requires a showing "that (1) he engaged in activity protected by Title VII; (2) that an adverse employment action was taken by the employer; and (3) that a causal link existed between the protected activity and the adverse action." *Roberts*, 998 F.3d at 122.

74. Here, Mr. Matovich engaged in protected activity under Title VII when he sought a religious accommodation from the Policy that would otherwise require him to violate his sincere religious beliefs. Siemens continued to oppose Mr. Matovich's unlawful practice through his formal termination.

75. Then, because of his request for an accommodation, Siemens subjected Mr. Matovich to its process to coerce him from exercising his rights under federal law. Siemens' Policy was not designed to look for a reasonable accommodation for Mr. Matovich because Siemens never intended to accommodate Mr. Matovich. Were it not for Mr. Matovich's religious beliefs and his request for an accommodation, he would not have been subjected to such treatment.

76. After denying Mr. Matovich's request, AND Mr. Matovich's opposition thereto, Siemens pressured him to capitulate and get the COVID-19 vaccine

with false information that Siemens could not accommodate his beliefs. Siemens then placed him on unpaid leave—a further coercive technique— only to terminate him at the end of the set period of unpaid leave.

77. On information and belief, Siemens imposed the period of unpaid leave with the intent to punish those who sought religious accommodation; hoping that the constant reminder of termination would result in them abandoning their religious beliefs and surrendering to a coerced injection of a COVID-19 vaccine.

78. Siemens' Policy forced those who were denied religious accommodations into a period of extreme emotional and psychological distress, seeking to coerce religious employees into compliance.

79. But for his request for religious accommodation, Mr. Matovich would not have experienced the psychological and emotional distress from the period of unpaid leave where he was constantly pressured to violate his religious beliefs.

80. Siemens also terminated Mr. Matovich for seeking a religious accommodation to its compulsory vaccination Policy. Mr. Matovich maintained his request for an accommodation through the date of his termination. Siemens terminated Mr. Matovich in close temporal proximity to his requesting a religious accommodation.

81. Separately, Siemens refused to admit its mistake and bring Mr. Matovich back even after it became apparent that (1) accommodations were available; (2) the COVID-19 vaccines were not preventing contraction of the virus; and (3) individuals with natural immunity possessed superior immunity to those with the vaccine only. Such actions were due to Mr. Matovich's opposition to Siemens' illegal employment law practice. The company had made up its mind to purge as many unvaccinated religious employees as it believed it could and the position against those seeking accommodations had become entrenched.

82. Siemens' actions in forcing those denied accommodation as sought onto unpaid leave just to terminate them after an arbitrarily specified period constitutes retaliation in violation of Title VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

(a)     Declare Siemens violated Title VII by failing to engage in the interactive process in response to Mr. Matovich's request for accommodations to its Policy and, instead, preemptively denying his request based on pretextual reasons.

(b)     Declare Siemens violated Title VII for its failure to provide a reasonable accommodation and disparately treated Mr. Matovich to

his clearly articulated religious beliefs when numerous no-cost options were available.

(c)     Declare that Siemens violated Title VII by retaliating against Mr. Matovich for engaging in protected activity through seeking religious accommodation.

(d)     Award Mr. Matovich damages, including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of Siemens' unlawful employment practices.

(e)     Award Mr. Matovich damages necessary to make him whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

(f)     Award reasonable attorney fees and costs; and

(g)     Award such other and further relief that this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this the 4th day of November 2022.

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (phone)
J.Donham@Donhamlaw.com

Steven Rinehart (Pro Hac Vice Pending)
**VESTED LAW, LLP**
110 S. Regent Street, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 456-9728
Mobile: (801) 347-5173
Facsimile: (801) 665-1292
Email: steve@utahpatentattorneys.com

Charles J. Hobbs (209321)
(Pro Hac Vice Pending)
**THE HOBBS LAW FIRM**
256 E. Market Street
York, PA 17403
(717) 793-2398 (Phone)
Email: chobbs@thehobbslawfirm.com